Please the court. My name is Joe Lovett. I'm here on behalf of Martin and Lisa Whiteman. This case is a straightforward property rights and freedom of contract case, and the issues are limited and simple. The district court wrongly conflated the West Virginia Department of Environmental Protection's regulations with reasonable necessity. According to the district court opinion, because of the deep West Virginia Department of Environmental Protection is called the D. E. P. After this, that's okay, regulates an activity like pit creation. That regulation confers a property right on a mineral owner. Such reasoning leads to the absurd conclusion that activities such as underground injection may be undertaken by operators even without surface property rights just because an agency like the D. E. P. Issues permits for activities such as underground injection. That would, if the district court's opinion is right, be true even if the agency, like the D. E. P. Here does not determine property rights before issuing the permit. Mr Lovett. Yes. Give you my take on this case, and you can tell me where I'm wrong. West Virginia case law, if I understand it correctly, has long made the mineral estate the dominant estate when there's a severance and under language that appears to me to be common language and deeds for decades. The use of the surface has been pretty liberally construed in favor of the mineral estate, and now we're moving into a different era where other there are other considerations haven't been considered that much in the past are in play. But if if the old rules are going to be changed, shouldn't the legislature do it instead of instead of this court? Certainly, if the rules are going to be changed, I agree with you. The legislature should do it. What I respectfully disagree with is the idea that this is something new. I think that the court's starting, you know, we cited a lot of cases in our brief, but starting back with the Marvin case, have construed carefully the right of surface owner to include everything that's not deeded to the, um, mineral owner unless it's implied. And when it's implied as the right is here, that that implication has to be done very carefully and strictly. So I think that it is true that there has been, um, case law suggesting that the mineral that the mineral estate is the dominant estate. But that's only to the extent that it's, um, use is that the surface use is reasonably necessary to recover, in this case, the gas. But isn't this a type of surface use that that is consistent with past practices? I believe it is consistent with past practices, but that's a different question. The legislature certainly has never dealt with it. The truth is, it is consistent with past practices, but that doesn't mean that it's reasonably necessary. Just because something has been done one way in the past doesn't mean that it was necessary in the past anymore than it is now. And it's clear that Chesapeake from the 30 B six deposition of Mr Bottrell has been in Oklahoma and Texas and even so that you would use case law to push state of the art. If it was, has this type of activity be considered reasonably necessary in the past? No, Your Honor, it's never been addressed before. In my view, this has never been addressed. The it's never been reasonable practice. Has it been practiced in the state? Certainly it has been practiced in the state, but no court has ever been asked to address whether it's reasonably necessary because it's never been raised. It's my contention that and it's our contention that never has been reasonably necessary. And Chesapeake admits as much in its own 30 B six deposition where it says that this wouldn't have been reasonably necessary 50 years ago, 80 years ago. Um, no, Your Honor, at any point it hadn't been raised because because it was so obviously reasonably necessary than nobody. Nobody challenged it. Sometimes I don't think I think that what happened was nobody really addressed this because these pits have become bigger on people's property and with new drilling methods and they take up more and more space and it really hadn't been contemplated before. I think like my friend, Judge Faber's case makes me a little nervous. Is are the issues in this case such that they lend themselves to a certified question to the West Virginia Supreme Court? Uh, that would be a reasonable approach, Your Honor. It's not one that's been addressed below. I think that I think personally think it's unnecessary. But if the court were interested in what the West Virginia Supreme Court had to say about it, that would be instructive. No doubt. Uh, did you bring this case? I should know this. But did you bring this case originally in the district court? Or was it removed? It was removed, Your Honor. We did not object to the removal, but we we filed it in the circuit court. I'm gonna ask. Maybe you're in the last case. I sort of asked the question about certification the same way you would like to win on the first instance. But if you're not gonna win, certification sounds mighty good. Absolutely, Your Honor. A certification beats the loss any time. And that's not as a softball. I'm just trying to get you to agree with us a little bit. Well, I understand. It is an important question, though. It is extremely important question. It's an important question for because I believe that the law of property rights is also well established and has been for some time. And these property rights are essential. And really, what the court, the district court does and what a state agency just because it has a radio, I don't think that's just the basis for the decision. Quite frankly, I think that might be overstating it. But and I think maybe, uh, Judge Faber's laid out that maybe, maybe, maybe you don't have the better of the argument. But I must also then join a little of what distraction said. It's a little bit the worst bothersome or not. But it seems to me this if you say something like this has been done, but not that this degree and Judge Faber, who knows very well that it's sort of a changing mill your setting there. Gosh, that just sounds like that might be something that the highest court in the state of Virginia might want to tell us how we proceed based on what their law is. Well, Your Honor, I will amend whatever, um, uh, motions we have filed and asked the court if it determines that this is a novel issue, that it, uh, instruct the district court to certify the question to the West Virginia Supreme Court. We'd be pleased to argue it for the Supreme Court of West Virginia. I'm not saying we'll end up there, but I'm just echoing the concerns that I've heard. I understand, Your Honor. Did Chesapeake deposit refuge from operations on other properties on this property? Or did they just use this as a repository for waste from operations under this lease? I believe only my understanding is it's only from this lease, Your Honor. I don't believe it brought other material from other places on here. Well, that makes your case a little more difficult than that. I, you know, I understand what you're saying, Your Honor. I don't I don't think it does, because really what we can't lose sight of is that the standard here is whether the placement of this material is reasonably necessary to the recovery of the resource. That has been the law in West Virginia for over a century. And so that really has to be the focus. The only evidence in the record shows that it is not reasonably necessary, but that it is optional. What are they gonna do with the waste if they don't put it on the on the property where they're actually doing the the the that's that's exactly that's exactly the right question, Your Honor. I think that what they should do is take it to a solid waste landfill, which is what they are doing now and what they admit they have done in Texas and Oklahoma for almost 10 years. But the point that you say that's what they should do. It seems to me the disconnect between that's what the law requires is reasonably necessary. I do believe that the law requires that they only do what's reasonably necessary on the surface property. What's reasonably necessary to get their gas out of the ground. What they're doing here is they're going beyond what's reasonably necessary and putting what leaving permanent waste pits. But wait a second now. But why is that not reasonably necessary? But taking it off site reasonably necessary. I'm sorry if I can. If I misspoke, taking it off site is not reasonably necessary. That's not the standard. The standard is what is reasonably necessary. So is that the default? Is that the default provision then? Well, there's your option. What is your option that meets the standard if they opted to do that, that this option doesn't meet? You understand that question? I think so. Let me try. There are several things that the operator could do with the material, right? It's only allowed to under the law to do what is reasonably necessary on the surface property. Okay, it can use the surface. Let's get to the only is used reasonably necessary. So what makes something not reasonably necessary is that there's an alternative or that this is an optional practice. I can think of at least two. But then, but then, may they do something that's reasonably necessary? May they do something reasonably necessary? How would you ever get to an option that they want to use if there's another option? Well, because of your definition, that makes it not necessary. There are at least two ways. They could pay the property owner, um, the for the right to use its surface. They could enter into a lease with the property and say, we're gonna put a pit on your property. We're gonna pay you for that, right? Because you own the property, right? That's what it should do. Or if it's failing that, you can take the material. That sounds nice. Under your theory, they can buy something that they already have. That's what they don't. That's your theory. I guarantee they gonna stand up in a minute and say they had they own that right. But you can't decide what they have to do under the law based on your view of what's a good idea. So one option you give me is at least through some other side by by that right, which you don't have. Well, that's not reasonably necessary under this right. That's a new right. Of course, you're on. Okay, what's the other option? The other option? Well, the other option is to take the material off site, which is what happens in West Virginia now and what has happened in Texas. The fact that it does happen doesn't mean that it has to happen, though, does it? No, but that's you see what I'm trying to say is that the the only right, the only property right that Chesapeake has on the surface of the Whiteman's property. I know. But let me get to this. I think I understand your position. Maybe I'm not making my my question clear enough. It seems to me that you define reasonably necessary in a way it's taken that reasonably necessary is a right that a property that that a minor would have under the law at some point. Is that right? Under some you could some point in in there are finding it would be reasonably necessary. Certain things that are certainly reasonably necessary, such as building a review is if there's any other option they can of some sort. I think that it's pretty clear that the standard is reasonably necessary. If it were just necessary, then then I think what you're saying is right. But I think the standard is reasonably necessary, and I think that makes it a question of fact for a court to turn. We're not necessarily so no pun intended, but reasonably necessary. It seems to me then that gives more latitude to the owner of the mining rights because not only does it have to be necessary, which is a harder standard, but reasonably necessary moves that age toward them, doesn't it? I think that reasonably necessary. You're right is an easier standard than necessary, and that's for a court to determine whether this activity on the surface of the Whiteman's property is reasonably necessary. And we submit that all of the evidence in the case from the 30 B six deposition to the current practices make it clear that this is an optional and has been an optional practice for at least 10 years and not reasonably necessary. I know that, but it seems to me this is where I'm missing your argument. It seems to me that you define reasonably necessary by option. If there is an option is not reasonably necessary. If there is a reasonable option, then it is not reasonably reasonable in there. It is. But you think you think if there is a reasonable option, then it's not reasonably necessary. That's absolutely correct, Your Honor. And I think that there's no law to the contrary, and I think it makes perfect sense as a matter of property rights and of contract law as well. I don't see how it could be any other way. I'll reserve the rest of my time. Thank you. Love it. Miller may please the court. Tim Miller appearing on behalf of Chesapeake Appalachia LLC. The appellee. First of all, I want to state you raise the question of certification, and I think my quick answer is I don't think it's necessary in this case. You want to come to federal court? Is it reasonably necessary? You said it wasn't necessary to reasonably necessary. What is reasonably necessary? Certified to the Supreme? I don't think it's reasonably necessary because the case law, as you have recognized already, is quite consistent throughout West Virginia that the mineral owner, particularly under a severance deed, a prior reservation of mental rights with all privileges and rights appertaining thereto, which is in the severance deed we have in this case, has been consistently interpreted by the Supreme Court of Appeals of West Virginia as giving the mineral owner a the dominant state and clearly giving them such rights as they believe are reasonably necessary for purposes if they do not cause substantial harm to the surface owner. It's a two part test in this case, and substantial harm part has not been addressed very much here. The question before the court and before Judge Stamp was first premises. It's a trespass case. The complaint actually started with seven counts, including negligence, property damage, traditional property damage, law, common law, property damage, negligent, intentional interference with emotional distress and other claims like that, which are cognizable under West Virginia law to compensate a surface owner if they believe they've been harmed by the dominant state holder. Plaintiffs voluntarily chose to dismiss with prejudice all of those claims and a single shot this case on a question of trespass law. And I submit to you it's a fairly ingenious argument. But what it is, it's in the guise of attempting environmental regulation and change the laws of West Virginia through the context of a trespass law claim. It's cleverly disguised. But the bottom line is the law of West Virginia, the West Virginia Legislature and Western Code Section 22 6 30 subparagraph a which Judge Stamp cited in his opinion clearly recognizes the existence and the use of drill cuttings back and burial drill cuttings. Back at the time these wells were drilled 2007 2009. We have a changing industry with changing technology, yet we want to be held. Apparently, uh, appellants want us to be held to a standard of what is the practice and custom now, not what at the time these wells were drilled. Modern techniques create more waste than the old fashioned shallow drilling. Well, first, I take issue with calling it waste. I call it drill cutting, but modern technology creates greater quantities of drill cuttings. So the question becomes in terms of balancing the surface owners interest and the minerals in our interest, for example, under horizontal drilling techniques. Now it's a common pad instead of having nine wells spaced, you know, a couple of 1000 ft apart. The common practice under horizontal drilling is you have a common pad from which you drill all of your wells. You just horizontally move in different directions. So if it creates significantly more waste, modern drilling, then that would be a grounds that distinguish the old cases. It could be under those circumstances what is reasonably necessary by the facts of that particular case and the harm, whether there was substantial harm in that case could result in a ruling under existing West Virginia law that you've exceeded your implied rights. That's why I don't think certification is necessary. We've got a long line of cases, Squires versus Lafferty, Atkins versus United Fuel, uh, and Porter versus Mac. If you look at the activities undertaken by the operator in those cases, they were disturbing the surface and the court said it's not a question whether you're disturbing the surface. You've got the right to do that because you have a property interest here as well. Both sides share the property rights here. A trespass claim and under West Virginia law, like all others, trespass is defined as the entry upon another's land without lawful authority to do so. It is undisputed. In upon this land, that can't be a trespass case. The question is, did we exceed our rights and entering in such a way that we created a cause of action? And that standard has clearly been for a long time in West Virginia and throughout other states in the oil and gas context, the reasonable necessary standard. And that's the standard judge stamp applied. Uh, the other district court that actually confronted this exact same issue was the Carch versus E. O. G. Was somewhat different in that before the drilling of the wells, the land owner hired an answer this. What? How? How do you define and apply the standard? In this case, I try to get to the resolution with your colleague and his. It seemed to me no matter what he said, it was a question of options. He defined it basically as a question of options, some degree of option. How do you How do you define the standard in a way we would apply it? I define it a and standard as one is the practice one which is customary and reasonable in the industry. Is it recognized by the state whose concern is primarily environmental regulation and harm to the public as well as to the private surface center is a practice that the state of West Virginia through its legislature and its D. E. P. Have recognized as one that does not create such a substantial harm that should be outlawed. There is no statute in West Virginia that is ever prohibit. It's not illegal. It's reasonably you can do it. Not only is it not illegal, I know I said, is that the standard? As long as this, if it's not illegal, it's acceptable. That's a factor. Does the state, for example, outlaw this or do they require something? Yeah, that fact, it can't be that that much. Can it? Well, in this country, it can't be that our determination here is exactly the same as a criminal law analysis. Can it is anything short of a crime is okay. That can't be outstanding. No, I think the question is, does the state and the regulators in our state and this is a heavily regulated industry. Do they consider this a practice that in effect they considered so unreasonable that they've either outlined it or they've regulated in a way that we've done something that violates those regulations. You're talking about going to the state legislature at that point or D. P. To change law. If that's what you want, that's what I believe being requested is your is your is your argument that the standard is only that which is set by statute. No, I don't. I don't. I know. I know. I know what you're you. I think you're trying to make the case to us that it's okay because West Virginia knows a lot about it. They have anything done anything that actually stops specifically what you're trying to do. But that seemed to me that's not what we're doing here. We have to decide how that standard, which is a recognized standard, the course would apply applies to this fact situation. It's got to be some kind of analysis somewhere short of a criminal or legislative enactment, doesn't it? Even even there's a question of if you want to change it and you go to the General Assembly. I clearly listen. I clearly admit and like the idea of public policies changed by going to the elected body and then then decide what they do. But that's not what we do here. We look at what the law is and apply it in facts and cases without trying to push. Maybe that's what I said. I don't want to be. I don't think we should be asked to push state of the art. It seemed to me that's what the law is in this situation. But we do have to apply that reasonable, necessary standard. And how would it apply factually here in your mind? Why is Judge Stamp right about how that applies to allow that in this case? Because in determining what was reasonably necessary, which is a property law concept of West Virginia, not a tort standard, he decided what should I look to to evaluate reasonableness? He said, One of the things I want to look to is what the state law say about it. So I wasn't making darken because something's not illegal, then it's per se and absolutely reasonably necessary. It is merely a factor. What does the state law? And he looked at existing case law or state law 22 6 30 and talked about first of all, the state clearly recognizes that the burial drill cuttings is a common practice, and their question was regulating it in that statute and the regulations promulgated pursuant to it. The state's interest was in reclamation, remediation, protecting the environment. The judge, therefore, looked at the drill cutting burial as apparently common accepted practice that the state of West Virginia recognizes is a common practice, and that is just one factor in determining reasonableness. The other thing he looked at was the question of and and who's faulted in the appeal brief. The argument is made that he made reference to the new law. Pratt Pack passed in 2011 horizontal well control act in the footnote. Judge Stamp made it clear he wasn't saying because this new law was enacted. That is, per se, imprimatur that this activity in 2007 and nine was, per se, reasonably necessary. He just merely was saying, and I think a fair reading opinion clearly shows he was saying, Look, the log back in 2007 2009. The state allowed this practice, and in fact, they now they allow it now. So that is a factor I'm considering. He also looked at the question of and I asked this. We're talking about the burial of dirt and rocks that brought to the surface as part of the drilling of the well. It had. It's a necessary practice to dispose of them. The appellants are arguing to you that absolute necessity standards asking what you adopt that if there's any possibility of an alternative that form, that means it cannot be necessary. That's not the standard. Reasonable  could have shipped it to Timbuktu. This is exactly the point that I'm trying to get to. I'm trying to understand the option as a player or as a determinant of necessary, and it would depend at that time in the industry. For example, if you showed an option in which under Option A, I'm creating a substantial burden to the surface owner, an option B is easily achievable without imposing a substantial burden to the property owner. That's a judgment decision that says, Well, then you should do be instead of a that's not we have here. A lot of the coal mining cases cited to you the Hooper case, the Marvin versus Brewster case. All those cases cited to you were ones in which we were dealing with substantial coal mining operations, which were depositing on the surface for refuse, erecting buildings. They were disposing of all their trash, their steel doing all these things, which precluded completely the use of the surface by the surface owner in a case in which there was no express rights. In that case, the court then engaged in a balancing test and determining whether that was the kind of implied right that the parties contemplated the time of the deeds and concluded. In some cases, it was some case. It wasn't Squires versus Lafferty, the West Virginia cases. The Buffalo mining case, for example, is 1980 decision by Justice Miller of our court. In that case, the deed did not give the mining company the right to electric power lines over the surface for any reason. Didn't grant them at all. Court looked at the question of well, what was reasonably necessary in this case to run this coal mine? They believed having electric power and string alone was a reasonably necessary practice. Uh, the court looked at practicalities of the situation and then determined on a reasonable standard and also looked at substantial harm. In this case, we have drill cuttings buried below ground. We have dirt and rock removed from the hole that was put back in a hole and covered up and remediated in accordance with environmental regulations to make sure it did not harm the environment. Plaintiffs and their appellate brief talk about possibilities, things that could go wrong with the drill put in the future. If those things go wrong in the future, if there's a slip, there's some contamination, there's some pollution of the groundwater. There are causes of action that exists to address that matter. But on the upfront basis requiring we dig up and remove something when a it's not been shown that it was absolutely necessary that it be removed the premises and be without showing a substantial harm just does not meet the legal test in West Virginia. I'd like to point out plaintiffs have pointed out to you a number of cases, a number of instances. They will believe the testimony of Mark Bottrell, who was the 30 B six representative of Chesapeake with some type of an admission that there was no need whatsoever to bury the drill cuttings on this property. And I submit to you the record does not submit that. Uh, Mr Bottrell's testimony clearly made a reference that joint appendix at 1 12 and 1 14 that this changed. This closed loop system was basically new technology. It started in a little corner of northwest Oklahoma, and he explained in his narrative. In that case, that's because the wells were so shallow, so small that, frankly, it was easier to haul him off site than to bury him on site. There's also in his work in residential areas at D. F. W. Airport. They were hauling off because of necessity. Under those circumstances, the constraints they were under, it was reasonably necessary. Is the difference here that you say the law is you have to look at what are we're talking about as being necessary in a general sense, getting rid of you call it over drill or whatever you call instead of waste and they look at what is necessary is, um, whether or not it's necessary to do it in the manner that it was done. I'm still trying to understand that how you seems to me that the other side, they may be right or wrong, but they focus on what's necessary in their more specific way. Is it necessary to do this exact procedure where you seem to get rid of what's there that you don't want? Correct. The general. The general is clear. It has to be disposed of the drill cutting somewhere. It's necessary. The question is, is it done in a reasonable fashion such? Yeah, but they don't. I don't think the other side sees it that way. I think they see the standard as is what your clients want to do. Is that necessary to do it that way? Is that not right? They look like that option, but they want to judge it in the light of them being the dominant estate holder, which they're not. No, no, no. I'm not. No, no, no. Listen, that's behind where I'm just trying to be sure that I understand the distinction because that that's when the question of what option comes in. You say, you say there, I take it. You say there is no option because you got to get rid of this material and not an option. In that context, there's not. It has to be disposed of. I'm not saying that context. I'm saying that's what you say. See, that's how you say is what's necessary. We have overage waste drillings. What do you call it that has to be disposed of? That's necessary to dispose of that. And then you say now we have to dispose of that is the way we're doing it. Is that a reasonable way to do it? Correct. I think their analysis seems to me runs. Is it necessary to dispose of the way you want to do it in that that that's where the distinction comes as to who's right and wrong. We're arguing about that, but isn't that the distinction on applying the standard? I think that is correct. And again, it goes to the question of, uh, you think it's clear on the West Virginia law that not surprisingly, you think it's clear that you read the law exactly the way that you're correct. You know, we submitted into the record in this case, and it was submitted in support of our motion for summary judgment. A report. It's a joint appendix 3 21 report of environmental experts. Eli Dr Eli McCoy, who reviewed the regulatory process and the standard practice to industry and clearly indicated this has a long stay. In fact, if in fact the way you read necessary is whether or not that specific procedure is necessary. I doesn't that push does not use the law to push the state of the art. In other words, if there's a procedure that the owner of the property on our what you call it, the surface property owner says is a better procedure now right now, then what you use last year the year before is no longer specifically necessary. There's a new system that you could use, and you have to go to that. So whatever comes along, it's just that the new technology, however you want to describe it, is pushed by their standard, isn't it? I do not see that. I don't believe it is. You could have I mean, under their reading of their standard under their reading, any development of new technology does push. That's what I'm saying. I think that's our they're any alternative through the development of new technology than that has to be the methodology use, and I don't believe that's the standard. You could still use other methodologies. I could argue under property law concepts. I still have the right to bury the drill cuttings of the property. No, but I'm just analyzing in light of what you're saying. Their standard, their standard would be is I think I'm walking through this would be if they're this this specific way you would like to do it or one would like to do it is not is no longer necessary because we have the development X plus one that now becomes an option. Since that's an option, the old option of X is no longer necessary because there is some state of the art option. That's I agree. That's what they're arguing. I just disagree with it. I'm saying that, uh, and would point out your honor that I think under the Western concept of moving towards like under the Well, Horizontal Well Act, which is the new the new technology coming up, they have changed that standard and they have done that as a matter of public policy under Western Code Section 22 Article six a one. I guess that takes us back to Judge Faber's opening question. I think it was opening question, which is sort of who pushes that? Who does change that? Should it be for West Virginia Legislature? And they did do that here. I believe it actually is their call. I mean, on an ongoing, on an ongoing basis, it is. It's a heavily regulated area, one in which the state has an interest, not just from the surface owner standpoint, but from the environmental standpoint and balancing the interest. If you look at the preamble to the Horizontal Well Control Act, it talks about we need to balance the interest of the surface owners, different stakeholders, the mineral owners and their rights and the energy needs of this country. That is clearly looking at the big picture of state function and state regulation. Judge Traction said something that's really caught my attention. It always does, but it didn't this case for sure. You're so confident of what the West Virginia law is. You didn't want to be in West Virginia court. Just wondering, uh, Your Honor, that's a matter of litigation strategy made in every case question whether you want to assert yourself or avail yourself of the diversity jurisdiction, which is our right under the title 28 of the code. I'm not saying it's not you're right. I thought maybe a better answer might be. You love them, but you love us better. That might be accurate. Your honor. Uh, it's a situation where Judge Stamp sitting in the wheeling panhandle obviously was not far removed from the Wetzel County Circuit Court. He's within the area. He knows full about Marcella's drilling. He has numerous cases on his docket about eso. Our preference. Federal court is clearly one. My client typically asserts in every case it has the opportunity. I was gonna ask you is called the biggest industry in West Virginia. It is in dollar volume and lawyers fighting over cold. Second biggest industry. That probably is correct. Your honor. Oil and gas, however, has become far more on why we're here. Obviously, we're dealing with industry. It's been around for over 100 years. You look at some of the cases that are cited here. Oil and gas. The Squires case is a 1924 case. It's the premier case on this question of the balancing of the rights. This discussion has been going on for almost 100 years in Washington. What the balance of the rights of a surface owner is and our state Supreme Court has consistently held when we have a mineral deed and it's the dominant estate, we're gonna look to what the mineral owner under custom and practice appears to be reasonable, necessary practice. So long as they're not doing substantial harm for the surface owner, it's almost like a nuisance. I see my time is up. Uh, unless you have any further questions, I'll have it. Thank you. Love is you have some time remaining. Thank you. Mhm. Let me be clear. We're not trying to push any, um, new technology forcing law. But this is law that's been established for a very long time. It's not pushing of the law was what the law would push is my question. I could be wrong on that, but it's not what that you push the new technology law. But it seems to me your standard might well do that. And maybe that still might be right. I think not. I think that the law was was is intended to, um, deal with new situations. And this clearly fits within this within the within the corners of established law. The oldest case, the most important cases, Marvin said, is very rarely than that. A case arises where upon this test, the reasonably necessary test, the mine owner can justify the use of the surface for lengthened keeping of his or still more rarely for the long continued deposit of rubbish from the mind. This pit will be there for a very long time. As long as you know, there are property owners in this country. That company will not be there 100 years from now, or it may not be there 100 years from now. And this is about that property and who accepts the liability for the potential winners. It covered. It's covered, but they slip and there's testimony. They slip regularly, and that means they fail and the material comes out. And it's not just rock and dirt. There are hundreds of barrels of chemicals brought onto the site by Chesapeake in that pit. And if that pit fails, I don't think it's gonna fail next year. But if it fails 20 years from now, Chesapeake is gone, and the property owner is left holding the bag. Wasn't there some indication that they removed a seal? A sealant? Lining a liner? Yes, they were. I'm not sure if, in this case, they remove the previous case that Judge Stamp heard. I think that typically remove the liners and it's and Mr Boswell testified in this case, their 30 B six witness that they're one of the main reasons they no longer use these pits is because of slips, and they go on and landowners hate them. And so what? What? But we're clear it hasn't. Haven't there been pits like that for many, many years have been, Your Honor, and those pits have gotten bigger, but they have and just because, honestly, no, no, no, no, no, no, no, no. I just wanna ask this. So then, if they have been pits used, is you think? And you say they haven't been challenged. But we at this point, looking back over usage of those pits, is it that we now know they use worse chemicals? Is it that worse things on a positive there in that they fail? We now know they fail. I mean, what is it that if you were to accept for a minute, which maybe you don't, that some type of open pit had been acceptable at some point? What is it that has changed? You say they've never been acceptable or just that now something has changed to make them under the standard no longer acceptable. Honestly, Your Honor, I think they've never been acceptable and that we thought of this case for the we thought of this claim and no one else had thought of it. It's as simple as that. I think these have always been impermissible. The coal cases make it clear that they've been impermissible and nobody brought it to the attention of a court until now. And that's really what this is. This is long established law with very bedrock principles of property law that have not changed for over 100 years. You think that in West Virginia, no matter how small the operation that any depositing of that on the surface and an open area and then covering it up that has never been acceptable. It's never under law in Virginia in West Virginia. It's never been acceptable as long as there was. It wasn't reasonably necessary. And that gets to your question, Your Honor of the alternatives. And don't forget, this is a summary judgment ruling. The only evidence in this record of whether or not this is reasonably necessary is Mr Bottrell's deposition in which he testifies that it has been optional to do this for a long time and that they have around populated areas not put the pits in. They put they started in Texas and Oklahoma. And then Mr Bottrell moved to West Virginia and he started doing it there. The only evidence in this record about this, about whether it's reasonably necessary, is Mr Bottrell's testimony and granting a summary judgment was completely inappropriate because even taking, I think, the position that, um, you know, is this new technology? That's a question of fact that needs to be examined by the court. And there was no examination of that question of fact. This is purely here on a legal theory that really contradicts the only facts in the record. And Marvin is clear. And also, more recently, the most important case in West Virginia, the Buffalo mining case says that we're implied as here as opposed to express rights or sought the test of what is reasonable and necessary becomes more exacting. So that goes to Judge Faber's question. I think his first question about the, um, issue of the dominant estate. What the West Virginia Supreme Court of Appeals has held recently is that these are not expressed rights. They're not granted in the deed. They're implied from the deed. And when that happens, as it does here, the analysis becomes even more exacting. So the court is supposed to look carefully to determine whether it's reasonably necessary. And I maintain that if you look at the record, there are no facts in this record that shows even that it's at all necessary. And all of the facts in the record go the other way. And so the grant of summary judgment was completely inappropriate under that standard. Um, and it's not what's customary. I heard Mr Miller say customary customary is not the law. The law is reasonably necessary. This may have been a customary practice. That doesn't mean it was reasonably necessary under all of the case. I don't think he equated the two. He was just trying to answer my question of what? What is that you look to? Very well. The point is that it's not what's customary is not. No, that's not the standard. The standard is what is reasonably necessary. And I maintain that you cannot find any facts in this record that show that this is a reasonably necessary practice. And one last point to address Judge Sheds question of Mr Miller about the what reasonably necessary means. They do go together. There are scores of cases that have looked at reasonable necessity, and it's always reasonable necessity. Reasonable qualifies the word necessity. It's not. First, you look to see if I know that. But the question is, at what level do you look at necessity? That's the point I was trying to make. Yes, you look at the I think that you look at the word necessity and use it as qualified with the word reason. I know. But necessity as to what necessity that you shouldn't that tailings waste whatever that that be dealt with or that is it necessary to deal with in this specific way that that was a point of my question. What's reasonably necessary is what's the law is what is reasonably necessary for the recovery of the resource. That's the entire phrase. We've just been using it as reasonably necessary, but it's what's reasonably necessary to get the gas out of the ground here. See, I'm out of time. Thank you. Thank you, Mr Levitt. Yeah.
judges: William B. Traxler, Jr., Dennis W. Shedd, David A. Faber